IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 15, 2013

## GREGORY G. KILGORE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40800608 John H. Gasaway, Judge**

_____

**No. M2012-01296-CCA-R3-PC - Filed June 27, 2013**

_____

Following a bench trial, a Montgomery County Circuit Court convicted the Petitioner, Gregory G. Kilgore, of aggravated robbery and possession with the intent to sell or deliver .5 grams or more of cocaine. The trial court sentenced the Petitioner to twelve years for each conviction to be served concurrently, in the Tennessee Department of Correction. The Petitioner appealed, challenging the sufficiency of the evidence, and this Court affirmed the conviction. *State v. George C. Kilgore*, No. M2009-01539-CCA-R3-CD, 2010 WL 2483546, at *1 (Tenn. Crim. App., at Nashville, June 21, 2010), *perm. app. denied* (Tenn. October 20, 2010). The Petitioner timely filed a petition seeking post-conviction relief on the basis of ineffective assistance of counsel, which the post-conviction court denied after a hearing. The Petitioner appeals the post-conviction court's denial, claiming that his attorney's failure to adequately cross-examine a witness and to procure a surveillance video constitutes ineffective assistance of counsel. After a thorough review of the record, the briefs, and relevant authorities, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

William F. Kroeger, Springfield, Tennessee, for the Appellant, George G. Kilgore.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel, Criminal Justice Division; John W. Carney, District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

# A. Trial

On direct appeal, this Court provided the following summary of the evidence at trial:

Rachel Diez was employed at a Food Lion grocery store in Montgomery County. On February 23, 2008, she was working as an office assistant during the second shift from 3:00 p.m. until the store closed at 11:00 p.m. At 10:50 p.m., a man walked into the store, found Ms. Diez in the office and requested to cash a payroll check. Ms. Diez informed him that the store had a rule against cashing payroll checks. The man asked to purchase batteries. Ms. Diez walked around to the cash register to ring up his purchase.

When she looked up to tell the man how much he owed for the batteries, Ms. Diez noticed that his wallet was already out, but he was reaching further into his pocket. The man pulled out a gun and demanded money. He grabbed her keys to the office and walked her to the safe. Ms. Diez gave him about $3,200 from the safe. The man ran out of the store with the money. After he ran out, Ms. Diez alerted the two other employees who were at the back of the store. Ms. Diez called 911. While she was on the telephone with the 911 dispatcher, the manager noticed a wallet. Ms. Diez recognized the wallet as belonging to the man who had held her at gunpoint and stolen the money. She read the identification information to the dispatcher.

Deputy Charles Hummel, with the Montgomery County Sheriff's Office, responded to the 911 dispatcher and proceeded to the Food Lion. He arrived at 11:00 p.m. He spoke with Ms. Diez as soon as he arrived. She showed him the wallet that the man had left behind. Ms. Diez identified the man who had robbed the store as being the same man who was pictured on the identification contained in the wallet. Officer Hummel put out a "BOLO" ("be on the lookout") for [the Petitioner] based upon Ms. Diez's identification of the robber and the information in the wallet. Law enforcement officers began looking for [the Petitioner] in the woods behind the store after a report from a witness who saw someone run out of the store and into the woods. They searched for about two hours but did not locate the suspect.

Michael Blevins is a criminal investigator with the Montgomery County Sheriff's Office. Investigator Blevins received a call around 11:30 p.m. regarding the aggravated robbery. He proceeded to the Food Lion. Around 2:00 a.m., he decided to abandon the search of the woods and proceed to [the

2

Petitioner]'s residence. Investigator Blevins drove past [the Petitioner]'s residence and turned around. While driving away from [the Petitioner]'s residence, Investigator Blevins passed a pick-up truck traveling at a high rate of speed towards [the Petitioner]'s residence. Investigator Blevins returned to [the Petitioner]'s residence. He found a red pick-up truck in the drive-way and people getting out of the vehicle. He illuminated his emergency equipment and got out of his patrol car. Investigator Blevins approached [the Petitioner] and grabbed his arm. [The Petitioner] pulled away from the officer and threw a bag with his right hand. Investigator Blevins forced [the Petitioner] to the ground and arrested him and called for backup.

When additional officers arrived, Investigator Blevins placed [the Petitioner] in the back of a patrol car and proceeded to the pick-up truck. Near the truck he found a cellophane bag containing a powdery, white substance. When sent to the Tennessee Bureau of Investigation ("TBI") Laboratory, this substance tested positive for cocaine. Investigator Blevins also searched the pick-up truck. Inside the truck he found four twelve-packs of beer, six bags of chips, various snacks, batteries, cigarettes, four cigarette lighters, one bottle of liquor about one-quarter full, condoms, and a cell phone. Another officer, Officer Dan Brinkmeyer located a receipt from a Citgo gas station time stamped 12:43 a.m. and dated February 24, 2008. When questioned later, the cashier at the Citgo gas station recalled a person making a purchase with a large amount of money.

Emmett Sexton is the jail chaplain for the Montgomery County Sheriff's Department. While [the Petitioner] was in jail, he sent for Chaplain Sexton. [The Petitioner] told the chaplain that he wanted to confess to a crime and tell the chaplain where he had hidden the money and the gun. The chaplain stopped [the Petitioner] and told him that he needed to confess to an investigator.

On May 5, 2008, the Montgomery County Grand Jury indicted [the Petitioner] for one count of aggravated robbery and one count of possession of .5 grams or more of cocaine. At the conclusion of a bench trial held on March 23, 2009, the trial court found [the Petitioner] guilty as charged with regard to both counts. On June 11, 2009, the trial court held a sentencing hearing. The trial court sentenced [the Petitioner] as a Range II, multiple offender to twelve years for each conviction to run concurrently.

*Kilgore*, 2010 WL 2483546, at *1-2. This Court concluded that the evidence was sufficient to support the aggravated robbery conviction and affirmed the trial court's judgment.

## B. Post-Conviction Hearing

The Petitioner timely filed a post-conviction petition claiming that he received the ineffective assistance of counsel at trial. The allegations that the Petitioner maintains on appeal are that his attorney ("Counsel") failed to effectively cross-examine witnesses and failed to obtain surveillance video from a Citgo Market.

At the May 30, 2012 hearing on the petition, the parties presented the following evidence: The Petitioner testified that Counsel represented him during a bench trial on his charges. He said that Counsel should have "done a better job" cross-examining Ms. Diez about her inconsistent statements as to the location where she found the Petitioner's wallet. The Petitioner stated that a better cross-examination as to these inconsistencies would have affected Ms. Diez's credibility as a witness.

The Petitioner testified that he believed Counsel should have shown the jury the Food Lion surveillance video. He then clarified that, after viewing the video, he understood Counsel's decision to not show the video because the video "doesn't show anything."

The Petitioner testified that Counsel failed to ask Officer Blevins, a witness at trial, any questions on cross-examination. He said that Counsel should have questioned Officer Blevins about Ms. Diez's inconsistent statements in different police reports. He further wanted Counsel to ask Officer Blevins about the Petitioner's dress at the time of his arrest and whether he found any money or a gun on the Petitioner. The Petitioner said that Counsel should have asked Officer Blevins if fingerprints were sought on either the wallet or identification.

The Petitioner testified that the police report indicated the weight of cocaine found at the scene was thirteen grams, but the Tennessee Bureau of Investigation ("TBI") report indicated 6.9 grams. The Petitioner said that Counsel should have questioned both Officer Blevins and the TBI agent about this discrepancy.

The Petitioner testified that he provided Counsel with two names: Justin Kettle and Steven Hooper. He said that one of those two men found his wallet and gave it to Ms. Diez in contradiction of her testimony that she found the wallet. To the Petitioner's knowledge, Counsel never attempted to contact either of these witnesses. The Petitioner said that, had these men testified, not only would Ms. Diez's testimony have been challenged, but the witnesses could have been asked about whether they could have identified the robber.

4

The Petitioner testified that the driver of the vehicle on the night of his arrest, Ronald Rushton, was another witness that Counsel should have called at trial. The Petitioner said that Counsel never even interviewed Rushton, and Rushton would have served as an alibi witness. The Petitioner explained that he was with Rushton at the time of the robbery. He said that, on the night of the Food Lion robbery, he was at a Scott's Citgo Market buying groceries. The Petitioner said that Counsel should have obtained the surveillance video from the Citgo Market to show he was wearing different clothing from that of the man who robbed the Food Lion.

On cross-examination, the Petitioner agreed that the testimony at trial was that the store manager, not Ms. Diez, found the Petitioner's wallet. The Petitioner said that he could not recall the Citgo Market cashier's testimony that a customer made a purchase with a large amount of money about an hour after the Food Lion robbery.

Justin Kettle testified that, on the night of the robbery, he went to the Food Lion to buy groceries. As he entered the store, a man wearing a hooded sweatshirt rushed out, and the store employees told him that the man was armed and had robbed the store. Kettle stepped outside and watched the man run to the end of the strip mall and then run behind the store. He did not recall finding a wallet or identification card during these events. He said that he spoke with police that night but never spoke with any attorneys regarding the case.

Michael Blevins, a Montgomery County Sheriff's Office deputy, testified that he did not know why there was a discrepancy between the police report that listed the cocaine found at the scene of the Petitioner's arrest as thirteen grams and the TBI report that listed the cocaine as 6.9 grams. He said that he did not recall being asked about this discrepancy at trial. Officer Blevins said that he did not recall Ms. Diez making different statements to police about the robbery. The officer agreed that he did not use a photographic line up in this case, explaining that he did not do so because Ms. Diez identified the robber based on the identification card left behind at the scene.

Counsel testified that he represented the Petitioner during a bench trial of his robbery charge. Counsel stated that he recalled the Petitioner's trial "vaguely." He did not remember any conflicting statements from Ms. Diez but said that, "[i]f there were[,] [he] would have asked about them at trial." When asked about why he chose not to show the video surveillance tape at trial, Counsel explained that he did not because "it didn't show anything." Counsel did not specifically recall why he did not cross-examine Officer Blevins but said that his "general rule is if I don't think I'm going [to] be able to accomplish something on cross-examination I don't." He said that he also would elect not to question a witness to prevent the State from addressing an issue they failed to cover on direct.

Counsel testified that he didn't not recall whether or not he questioned Officer Blevins or the TBI agent about the differing amounts of the cocaine in law enforcement reports. He said that he did not feel it necessary to question on those types of discrepancies because of the frequency with which it occurs. He said that, in his experience, the TBI "almost always" reports a lower weight for drugs.

Counsel testified that, based on his recollection, he interviewed Rushton, as the Petitioner requested. Counsel said that Rushton's account of the events was not what the Petitioner had portrayed to Counsel, so he did not call him to testify at trial.

After hearing the evidence, the post-conviction court denied the petition, finding that the Petitioner failed to prove by clear and convincing evidence that Counsel was ineffective and that the Petitioner's defense was prejudiced by Counsel's representation. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that he received the ineffective assistance of counsel. Specifically, he asserts that Counsel failed to: (1) effectively cross-examine Officer Blevins; and (2) obtain a surveillance video from Citgo Market for his defense. The State responds that the Petitioner has failed to prove his allegations by clear and convincing evidence and that, therefore, the post-conviction court should be affirmed. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth

Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have

produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

## A. Cross Examination of Officer Blevins

The Petitioner argues that Counsel should have cross-examined Officer Blevins on several different issues including "the weight of the drugs found, where the drugs were found, the conflicting statements made by . . . Ms. Diez, whether he found any money on [the Petitioner], whether he found a weapon on the [Petitioner], or whether the clothing [the Petitioner] was wearing when arrested matched the clothing worn by the person who robbed Food Lion."

This Court has previously noted that "cross-examination is a strategic and tactical decision of trial counsel, which is not to be measured by hindsight." *State v. Kerley*, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991). "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Counsel has some discretion in conducting the defense and is entitled to use his best judgment in matters of trial strategy or tactics. *See McBee v. State*, 655 S.W.2d 191, 193 (Tenn. Crim. App. 1983). Counsel testified that his decision not to cross-examine Officer Blevins was due to either his belief that he could accomplish nothing further through cross-examination or because he wanted to prevent the State from addressing an issue they failed to cover on direct. We note that, consistent with Counsel's testimony that there was nothing further to gain through cross-examination, Officer Blevins testified that he did not recall Ms. Diez making conflicting statements about the location of the wallet. Further, on cross-examination at the post-conviction hearing, the Petitioner agreed that Ms. Diez was not the person who found the wallet. As to the Petitioner's clothes and items in his possession at the time of his arrest, there was roughly a two-hour period of time between the robbery and the Petitioner's apprehension. Therefore, it appears that this line of questioning would have been of little value to the

8

Petitioner at trial.

The Petitioner also cursorily asserts that Counsel failed to call the TBI agent in conjunction with his argument that Counsel failed to cross-examine Officer Blevins about the discrepancy in law enforcement reports about the weight of the drugs. According to the testimony at the hearing, the police report indicated the cocaine amount recovered at the scene of the Petitioner's arrest was thirteen grams, while the TBI lab report indicated the cocaine weighed 6.9 grams. The trier of fact convicted the Petitioner of possession with the intent to sell or deliver .5 grams or more of cocaine. Evidence was presented of both amounts and, based on either report, there was sufficient evidence for the trier of fact to convict the Petitioner of this crime. Even assuming Counsel should have questioned the discrepancy to further highlight it, the Petitioner has not shown that the outcome would have been different.

Accordingly, we conclude that the post-conviction court did not err when it denied relief on the basis that Counsel did not cross-examine Officer Blevins. The Petitioner failed to show by clear and convincing evidence that Counsel's representation was ineffective in this respect and that he was prejudiced by Counsel's representation. The Petitioner is not entitled to relief.

### B. Citgo Market Surveillance Video

The Petitioner argues that Counsel was ineffective for failing to obtain surveillance video from the Citgo Market on the night of the robbery to show that the Petitioner was dressed differently than the robber at Food Lion. The State responds that the Petitioner has failed to prove this allegation by clear and convincing evidence, and, therefore, the post-conviction court properly denied this claim. We agree with the State.

At the end of the hearing, the post-conviction court made the following finding as to the surveillance video:

> [The Petitioner] complains that [Counsel] should have found out whether Scott's Citgo Market had any security video that would have - - that would have established, I suppose, the time of night that - - or early morning that [the Petitioner] went there to purchase items. But there's been no showing today that Citgo Market had any video, security video. So it is - - it's doesn't [sic] - - it's no good - - it doesn't do him any good to complain that [Counsel] was ineffective by not finding out if there were video footage at Citgo market that would have helped [the Petitioner] when [the Petitioner] has not produced it himself today. And if [it] wasn't available today because of the passage of time he could have offered testimony by a witness that at that time there was

9

security video that if . . . inquired about or asked about possibly could have
been provided.

The evidence does not preponderate against the post-conviction court's findings. The Petitioner failed to provide surveillance video from the Citgo market, therefore, this Court has no way of knowing what impact the video might have had on the trial. The Petitioner is not entitled to relief.

## II.  Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied post-conviction relief.  Accordingly, we affirm the judgment of the post-conviction court.


_____
ROBERT W. WEDEMEYER, JUDGE